Garrison, Allen Orshell, Gregory White, Charles Durr, Luka, Thomas Baraba, and Scott Brennan. I think you were here when I gave some brief orientation to those who were involved in the first case, is that right? That's right. Okay, in that case, would both sides, those who will be arguing for both sides, please step up, identify yourselves for the record, and then the appellant may proceed with your argument. Good morning, Sean Crowley on behalf of Oak Brook Bank, the plaintiff's appellant. Good morning, Bill Markman on behalf of the defendant. I'd ask to reserve five minutes. May it please the court, the first issue on this appeal is the application of the Illinois Supreme Court's holding in Collins v. Raynard, and as a practical matter, what exactly does it mean and how is it applied by courts? Well, all that that case says is that you can plead in the alternative. Correct. It doesn't touch on whether, when you have to make the election. Correct. That court says it can plead in the alternative, and then the following decisions that have come from the appellate court, which I quote, the Union Planters case, and actually a couple of the cases I quote. Jumbo, but Union Planters is also an alternative case. The case that comes closest is Jumbo. Well. That's Justice Hoffman's case. Well, I don't think that's true. If you look at Union Planters, what Union Planters specifically held, Your Honor, is that since the claims were plead in the alternative, that the parties have the right to go ahead and take both claims to the jury. Now, obviously, you can only recover on one claim. They only took one. In that case, what happened was the litigants in that case decided for tactical reasons that they didn't want to be in a position where they had both claims. But the court had an entire section of its opinion dedicated to this issue. It very clearly held that both of them could have gone to the jury. Now, in the Majumdar case, in that case, the holding of the court was that the claims in there were actually the three claims, illegal malpractice, breach of contract, and breach of fiduciary duty. The court held that they were identical, and there wasn't any claim that they were plead in the alternative. I agree that Majumdar, in its express language, said that you could have alternative pleading, which is nothing new, really. But where both claims are identical, you can dismiss the one before it goes anywhere at the pleading stage to proceed with the other, because basically they both are totally duplicates. I think that what that depends on, though, Your Honor, is whether or not they're pled in the alternative. In this particular case... Do we look at the pleading, or do we look at what it actually says? I mean, do we just assume if it's pled alternatively that there's no further delving into that, or do we actually look at what is alleged? Well, I think at the pleading stage it's very difficult sometimes to look past whether or not it's pled in the alternative. I mean, I could think of, I mean, there might be a situation where the claims are so identical and that there's no dispute by the parties as to what the scope of a contract is or what the particular duties may be. But as a practical matter, that's a very rare case. What normally happens in these legal malpractice cases, particularly when there's not an engagement letter, is that there are blanket denials regarding what the scope of the engagement was, what the duties were, what the terms of any oral contract were, and there are, in virtually every case, there's a dispute. What were the major differences or even minor differences you would say between the two pleadings, the breach of contract versus the malpractice? Well, I think the biggest one, if you want to take a look from the pleading stage, is that there were identified, and I think it goes, I believe it was beginning of paragraph 21, I'd have to go back and take a look, specific items that the defendants in this case were alleged to have agreed to do, specific tasks. With respect to the tort claim, the negligence claim, that does not rely upon the defendants agreeing to perform specific tasks. What that relies upon is whether or not simply the fact that they were acting as open-faced attorneys, whether the standard of care required them to perform certain acts, and whether a reasonably prudent attorney under those circumstances did perform. All of that goes into your election when you make it. You can make your choice. And tactically, it's a rare occasion, as you, I think, concede in your case, that a lawyer will let both go to a jury, even if he can do so, because you'll jam their networks. You'll confuse them. Well, some people might be worried, depending on the case, that a jury might get confused. But once again, I don't think you can have a blanket rule, which is why the case has a right to say, look, the party has the right, if they want to, to wait and take both to the jury and then only recover on one. Well, why would it not be harmless error in any event, unless you could show that the contributory negligence here played a part in the verdict, which you can't? This is the example of why it's not harmless error, Your Honor. In this particular case, if you take a look, the defendants put on an expert witness who testified that, absolutely, the defendants had no obligation whatsoever to look into the zone. They had no obligation to take a look and determine whether or not this building could be built. They said that attorneys that handle these types of transactions simply don't delve into those matters. The jury might have believed that testimony and said, real estate attorneys don't do that. That burden is on you to show that the error is not prejudicial. Well, here I believe that the error was prejudicial because the defendants were able to go ahead and put on that expert testimony and make a case to the jury that they had no obligation. But how would the contract be any different? If what the contract deals with is the posture of the matter at the time of the closing, that's where the initial payment was made, the $4,476,000. Why would the contract action do you better? Because here we still have to go to the old Hadley v. Baxendale to look for consequential damages, and I think you have a better shot in tort than you have in contract. Well, I disagree, Your Honor, from the standpoint that these would not have been foreseeable if that's why you're citing the case. Here, the perfect example was we had evidence. We had actually written evidence. We had communications between the loan officer and between the attorney, where the loan officer specifically asked the attorney to perform specific tasks, including making sure, verify that the building can be built. So this is a situation, to go to Your Honor's point, where you have the possibility where a jury can come back and make a determination that, yes, a real estate attorney normally under this circumstance would have no obligation to look at the zoning because that is a fairly complex matter. But here, because... In this case, didn't the lawyers basically tell the bank that you should assume that there are no permits? That was highly disputed. It was disputed. The bank officer, the old... Old Mario O'Rourke. She said that she was never informed of that. Correct. It was hotly disputed. And that's one of the points is not only did you have a defense expert testifying that, no, there's no obligation to do these because real estate attorneys under these circumstances don't delve into those complex matters, but then we had hotly issued questions of fact as to what the scope of this representation is. So here, the jury believed that there was an express contract in which the defendants agreed that, yes, we will verify that the building can be built and didn't do it. You could very easily have different verdicts. On the one hand, they could believe the defense expert that says as a general matter, real estate attorneys aren't going to get into this. But under the particular circumstances of this case, because, in fact, the attorney did agree to do it because there was something expressed in writing saying we need you to verify the building can be built, under this circumstance, we're going to go ahead and find in favor of the plaintiff on the contract count because they agreed to do it. Of course, as you point out, the initial commission, so to speak, to the attorney is in dispute, isn't it? Whether it's simply related to documentation or whether it even extends to zoning. However, let's let the cat out of the bag right now. If there is a legitimate dispute of a material issue of fact, it's not legitimate fodder for summary judgment. And as such, would be reversible on that ground, leaving only the question of the issue of the remainder of the other $17 million or whatever it was since, evidently, the initial down payment did not result or would not result in any real damage because it would have been covered by the mortgage, the security interest that you might have. That in and of itself, of course, was in dispute during the trial. I mean, one of the major issues you had. It seems to me a key issue in this case and it might as well be put on the table right now. Sure. Moving from the issue of whether or not we should have been allowed to go to the jury on the contract claim as well as the tort claim, but bringing the summary judgment issue that the court ruled on, you can look at the court made a series of... The summary judgment on the expert was that the expert only gave an opinion up to the first disbursement. That was part of the explanation at one point. And even there, we obviously take issue with the court's ruling from the standpoint is what the expert testified to is that the attorneys committed malpractice in the way that they drafted the documents, failed to advise the client regarding the risk of the documents. And what the expert said is he's evaluating their conduct with respect to these documents all through the period of time when the initial closing took place because the attorneys aren't physically involved in the subsequent disbursements. If you think about it, you set up the construction loan, you set up the procedures, you advise the client regarding what the risks are, but then when the money's actually doled out in the subsequent disbursements, the attorneys aren't part of that transaction. The question should have been once the attorney gave his opinion that, in fact... Once our attorney expert gave the opinion that the defendants had committed malpractice, then the question really should have turned to, okay, well, what were the damages that flowed out of that malpractice? And certainly it's our position that testifying that failing to advise the clients regarding these risks and setting up the documents in such a manner without advising the client regarding the material changes... But didn't the expert limit his opinion to the initial disbursement and weren't subsequent disbursements... They were segregated, were they not? When you mean segregated, they were paid out at different times. So wouldn't you need an expert to say that but for the first improper initial disbursement, the bank would never have made these other disbursements and therefore... I mean, I don't know... That's a causation issue. I think what we're getting into... I didn't interrupt you. I'm sorry. That's a causation issue. That's the point I'm making. The expert, he can only testify to what the standard of care is and how they breach the standard of care. As for what the bank would have done had they been properly advised, that absolutely isn't the subject of expert testimony because these attorneys that we brought in, they're not experts on how the client is going to react once they're advised regarding the risk. They're just experts on how an attorney is supposed to act under the circumstances. And actually, in preparing for the argument today, one of the cases that we cite for different propositions is Cooper's and Libren case, the Illinois Supreme Court case. On contributory negligence. On contributory negligence. When you read the facts of that case, it's interesting because it's somewhat analogous to this proximate cause issue that Justice McBride brought up because there the court points out that the auditors, while they were auditing the investments over a period of time, they were actually being sued for investments that closed later on after they completed their audits. But as the court pointed out, the plaintiff's theory, which it accepted, was, yes, but had the auditors done their job at the time and properly advised the client what was going on, they never would have made the subsequent investment. And that would have been the contemplation of the parties under contract rule or foreseeable, so to speak. It's a matter of duty under, you know, foreseeability runs twice. And when you're talking about foreseeability, it better be helpful for you to make clear whether you're talking about the foreseeability that the judge takes a cognizance of or the foreseeability that the trier of facts. In other words, whether it's the breach or the duty. Yes. Well, both of them here, let's take both cause and fact and legal cause, I suppose. The first part, let's talk about what the trier of fact deals with. And to take the simplest example, the zoning. Would it have been reasonable for the attorneys to believe that if, in fact, they allowed the bank to go forward and lend money on a loan document that they set up, which contemplated subsequent disbursements, without actually having the right to build the building, that the bank would continue to lose money in the future? Yes, I think that's absolutely foreseeable. Let's see where that leads us if we start injecting the contributory negligence issue here. You, of course, will claim that the contributory negligence follows the live grant rule, whether it's an accountant or any other professional, including a doctor or a lawyer. Correct. Your opponents would seem to want to limit that to only to accountants. But it seems to me that aside from its life as being a part of the doctrine of contributory negligence, it also has to do with the foreseeability issue as well, since it involves conduct of an intervening human agency. So the question, I suppose, would be whether, even if the attorney fell short in what he did, only with respect to all of the payments that were made, the fact of the matter is that there is an intervening human agency here, or what's sometimes referred to in legal malpractice as superseding cause, analogous to where one lawyer commits the malpractice on a statute of limitations but is fired while there's still a month left and it goes to another lawyer. That other lawyer's negligence will supersede the first lawyer's and, in that sense, absolve the first lawyer from liability. Now here, if you have experienced bank officers who could act on their own to prevent the injury, why wouldn't that constitute contributory negligence or at least interfere with the foreseeability of the injury with respect to the first lawyer? I think it would only apply, and we'll deal with the subsequent disbursements first. It only applies if they fail to follow the attorney's advice. If the attorney comes in and the client has a problem, like the problem isn't necessarily the best word to use because they had a loan and they needed somebody to negotiate and document the loan, but the bottom line is we, as attorneys, we deal with people who have problems. That's why they come to us. Once we give them the advice and we set the client on a course of action, I would agree with you if the client then doesn't follow our advice, strays from our advice, or in the provision of the attorney giving us the advice, we do something that interferes with it. For example, we don't tell our attorney all the facts, which then would change his advice. Then I would agree with you. However, if the situation is simply we have a client who's got a problem and he comes to me and he asks, okay, how should I deal with this problem? And then I give him his advice and I try to help him and I send him on his way. If later on he then follows my advice, gets himself into trouble, I don't see how I can come back and say, well, listen, it was your fault for getting into trouble to begin with. No, that essentially postures the argument that clearly has been defined in your briefs. You're not denying that contributory negligence may be a defense in a legal malpractice case if that negligence precludes the attorney from being a cause. Yes. But if the advice interferes with the activity, the function of the lawyer to prevent the injury, then it will apply. Where it doesn't, you say it doesn't apply. And nothing more. I think that's correct. And if the client then doesn't follow the attorney's advice, then I think you get into the issue of, okay, is there an intervening proximate cause, somewhat analogous to the idea that you've got one attorney who steps out and there's still time on the statute of limitations, and yet then the follow-up attorney doesn't follow the case either, but you can't sue the first attorney. Well, yeah, you can claim comparative faults or contributory negligence. Well, that's Garibaldi's Cooper v. Library. That, I believe, is straight Cooper v. Library, in which I don't see how it does not apply to attorney-client malpractice, attorney malpractice cases, simply because the court almost went out of its way to bring in other examples of cases. I mean, the oral surgeon case, the Steiner case actually was a fascinating case, which is cited favorably by Coopers in that that underlying case is first an actuarial malpractice case, but then in Steiner, when you take a look at it, they then give a hypothetical about an attorney malpractice case, which I say, well, hold on a second. If you went to an attorney and you asked them to interpret ERISA for you and you followed their advice and end up being wrong, well, of course the attorney can't come back and say, well, the initial problem you had under ERISA somehow is comparative fault. So, giving the examples, I think, that the court pulls from in the Coopers case and then making the point that yes, Illinois has in fact adopted Section 7 of the Restatement of Torts, I don't think there's a probable argument that it doesn't apply. But then your argument would then be that the contributory negligence will only apply where the attorney's advice is not followed and where the attorney could have presented it had his advice been followed. But it wouldn't apply where the client, so to speak, acts totally irrational at the point where it gets a lawyer and the lawyer forgets to give an instruction that the client could behave moronically and still recover. Well, under that circumstance, presumably the client is not following the attorney's advice. So, I think there's two points there. One, the lawyer forgets to say something that is within or is delinquent in not discharging one of his professional obligations. But it's a professional obligation that is also totally consensual. And in the case where you're dealing with a lawyer being retained by experts in their field, which is more akin to what's happening here where you have professional loan offices dealing with this attorney, and they don't follow, they're not relying on their attorney in spite of their common sense. They're simply not exercising any common sense in conforming their practices to avoid the risk of injury. Can they lay it all on the lawyer, so to speak, simply because the lawyer was delinquent with regard to a given area of responsibility? Well, I think, once again, it presumably is somewhat fact-specific in that I can't imagine the specific case Your Honor is talking about. If you take the facts of that case. How about this one? Okay, well, that's different. In the fact that this case, the vast, vast majority of the evidence that got piled in during trial supposedly went to comparative fault or actions that were taken by the client in initially getting involved in this loan transaction to begin with and even allowing it to get to the loan committee or come out of the loan committee for approval. There was an expert who was brought on specifically to testify to nothing else other than how reckless the bank was in underwriting this loan and take, for example, agreeing to loan money out to somebody who had previously declared bankruptcy and might not have had stellar credit. That's the circumstances that this loan exists. It's not finalized yet. It just comes out of the loan committee when the lawyers come in. Lawyers are aware of all of these facts, and they're asked to come in, document the loan, How about the extended inspections of the work in progress by the bank? Is that involved here? Well, that comes in afterwards. At the time the loan closed. Well, there's a $4.5 million disbursement. Yes. Wouldn't that, or is there anything in the record as to follow-up responsibilities by the bank to see how that $4.5 million was spent? No, not the first $4.5 million, because the first $4.5 million wasn't going to work that had been completed. The first $4.5 million was to take out another bank for the land. So what you're talking about is subsequent disbursements, but on the subsequent disbursements, absolutely there was testimony that it was contemplated by the lawyers at the time, that even after the initial closing of the loan, there were going to be additional disbursements that were going to be made before there would be inspections, before plans and specs would be completed, because the attorneys knew that money was needed to get that stuff done. But at some point, the bank would itself have its own professional responsibility to inspect the progress of the work. And whether it's in the first disbursement or the second, wouldn't that be something which could have been prevented had your theory as to what the lawyer was responsible for here been fully implemented, but by the same token would also have been avoided had the bank done its follow-up work, not simply the initial mistakes made by the bank. You know, you have an analogous situation in tort law with the fireman's law. You know, that the fireman who gets injured by the fire can't sue the person who, the arsonist, and I'm not judging the arsonist, for starting the fire in the first place, because that's what the firemen are for, to fight fires. But they can be held liable for negligence in creating conditions once the fire starts that make it hazardous to firemen, aside from the fact that there's a fire. There's an analogy. I think here, it seems a lot of this comes down to foreseeability, and under the circumstance of this particular case, like I said, there was testimony before the jury that, in fact, it was foreseeable that additional dispersions were going to be made, even though this building wasn't going to be constructed. The defendants knew that additional money was going to have to be spent before you got to that point in time. And I don't want to forget, on this expert issue, it is not accurate even to say, to break this down, there are two parts to our expert's opinion, going back to the question Justice McBride had asked earlier. One part has to do with the malpractice in connection with, let's say, setting up the construction loan, advising them on the front end, setting up the procedures, drafting the documents, all of that. He did testify, independently of that, that the loaners were brought back in in two different circumstances, and they were negligent when they were brought back in, after the loan had closed. Not specifically with these subsequent disbursements, but after the loan was closed. One was when the loan documents were amended because another piece of property was purchased, 70 West Area LLC, which is in our briefs and in the record. And our expert, Mr. Kamen, testified, well, listen, when they got brought back in then, yes, they had an obligation to take a look at the loan and see what was going on at the time and see whether or not it was performing, because otherwise you can't possibly cross-collateralize these documents because there might already be defaults, which you're waiting. The attorneys didn't do that. He said that was negligence. And then the final time is the bank sent the lawyers the construction agreements and documents, but at that point the attorneys should have seen that the loan was not performing, it was materially different than what had been approved, which was part of what the defendants, at least there's evidence, part of what the defendants had agreed to do is to make sure that- That would have been only through the zoning, is that right? Part of it was through the zoning, but actually the lawyers should have seen that a different building was being built. And those are two subsequent- How would the lawyers see that? Pardon me? How would the lawyers see that? Do they have an obligation to inspect the premises? No, no, you could see it from the written documents that were tendered to them. You could see that it was a different building that was being built. And, of course, in both of those instances, the bank personnel testified that, well, listen, if the lawyers had come back and said we had these problems, we would have once again shut the loan down. Now, that would be strange for the lawyers to-I mean, if those were the facts, so be it. But it certainly is plausible to think that the lawyers would have no duty to inspect the documents, which is not in their area of expertise, and shut out the bank officials who would have the necessary expertise to inspect the site. Well, but once again, wouldn't you take it on, Your Honor? I mean, it's one thing- It would be anomalous to take it on. In other words, I think the burden would be on you to show me. Well, and that's the point of the trial in calling the expert to testify about these things, which he was precluded to do because of the summary judgment opinion that was entered. And I think there were findings of fact, basically, that were made regarding foreseeability is what it comes down to as to why the summary judgment was granted to begin with. Is there anything more? I'd like to reserve the remainder of my time, Your Honor. Thank you, Your Honor. And I'll come back and rebuttal. Sure, Counsel. Thank you. Please report. Counsel, before you start, let's talk about Cooper's versus Libra. I'd be happy to. And what logic is there in the universe to distinguish between contributory negligence as it applies to accountants, doctors, and contributory negligence as it would apply to lawyers? Okay, well, I think if you look at the cases, when considering contributory negligence, the first thing you have to look at is the injury. Okay? And the first question you have to ask, is the injury divisible or undivisible? Now, with respect to the doctor's, the Templin case, that injury is clearly divisible. I mean, the injury he incurred upon himself for having bad hygiene was not the injury caused when the doctor cut the nerve. That's an indivisible injury. Okay? Or that's a divisible injury. When the injury is indivisible, then you look at who caused the injury and whether or not the plaintiff contributed to it. Is that the same rule that would apply to accountants? And now we're getting to accountants. That was my next step in the logical progression. The next step is, this is a minority position. It's called the audit interference rule. Throughout the country, Illinois takes a minority position with respect to accountants only. Why? Because an accountant does an audit. Now, an audit, by its very purpose, and the definition of an audit, is to test or vouch for the accuracy of accounts. The whole idea is to determine if the client has been negligent or there has been wrongdoing. I mean, that's the whole idea of an audit. Now, what counsel is asking you to do is asking you to extend that minority position beyond accounts to other professionals. But if the accountant is correct, and it's biggest, that this lawyer undertook to check out the zoning, as well as the documentation, as well as the necessary facts for the closing, and several other duties that he undertook. If that were the case, why would the lawyer be able to claim contributory negligence? Wouldn't that be analogous to someone who smokes all of his life and hires an oncologist, in the end, to operate on his lungs to leave an instrument in the incision saying, you were a contributory negligent. You shouldn't have been smoking. You shouldn't have needed me in the first place. No. It's not analogous. Why not? Because in the situation with the doctor, the injury is divisible. Here, the injury is the failure to pay back the loan. If counsel were, why would counsel be hired to check out zoning after the borrower, the mortgagor, assures them that he has the zoning? Isn't it as a cure or as a preventive for any oversight that the bank might have had in undertaking to lend money to these guys in the first place? You're assuming that that's the only cause of the injury. There's a single injury with multiple causes by multiple players. And this is a single transaction. But isn't that the reasoning of Librand? And isn't that the same reasoning that would apply with regard to other professionals who are retained by their clients to compensate or to lend additional oversight to their own negligence as well as their own human fallibility? That is the reasoning of Librand, but it doesn't apply to these facts. Taking the assumptions that you raised that the only issue was the zoning, the injury here is the failure to pay back the loan. And there were multiple causes of that by multiple parties. But let's move on. Let's assume that this court decides to apply Cooper's Librand to this case. If you read the Cooper's case, they rely heavily on the New Jersey case regarding insurance brokers. And, in fact, counsel cites that case in his reply brief. It's called Aiden v. Fraun, okay? And now I'm getting to injury. I mean, we're talking about a motion unlimited to bar evidence. And the issue here is evidence. They haven't complained about the instruction. There's nothing in the brief about instructions. It's only the evidence that was admitted in the case regarding the conduct of the bank. Well, if you read Aiden carefully, and it's 776 Atlantic 2nd, 792. At page 803, and this is where they said they applied the bond interference doctrine to an insurance broker, they said that the evidence is admissible anyway under the sole proximate cause theory. And I'll read it to you, Judge. Page 803, our disposition does not prevent brokers from contending during trial that insurance failure to read the policy severed the causal connection between the broker's fault and the insurer's harm. That is precisely the argument defense counsel made in this case. The trial court did not preclude Fraun from presenting evidence to attempt to prove that Aiden's admission that he did not read the policy until after the fire was the proximate cause of the harm. So the evidence gets in anyway under sole proximate cause. So there was no error. Let me direct you just briefly to this notion that trial courts force plaintiffs to select between the legal malpractice and the breach of contract error. How can you say there wasn't prejudicial error there? Because in the malpractice, this whole issue of contributory negligence came in, whereas the allegation regarding the breach of contract is essentially a different one. So why should they have been forced to have the jury decide only the malpractice? Well, first of all, it was their election. But the court forced them to make the election. The court said that you have to pick. I'm not going to let both of these go to the jury. Well, I think the law – They picked one of the two. I understand. But I think the law is clear in – well, there's a couple reasons. I think the law in Majumdar is clear and correctly ruled upon. And one of the things they say is that it only applies to breach of fiduciary duty and legal malpractice in non-contract. But if you read the actual holding in the case, Judge Hoffman said he granted the plaintiffs' lease to re-plead either their negligent action or their breach of contract action against the defendants. There's been no case in the state of Illinois that has reversed that. The union plaintiffs doesn't reverse it. It talks about it in DITCA. And that, I think, is illogical. But the second answer to that – I can match your quote for quote from a jungle council, even though there is a Supreme Court Rule 252 that discourages anybody from reading the argument. But I don't think it goes towards quotes. At any rate, Justice Hoffman makes very clear that when it's duplicative, it's dismissive. And that was my second point. If you look at the complaint, which is attached to the counsel's brief, he re-pleads and re-alleges each of the allegations and then makes the conclusion now it's a breach of contract. There's nothing distinct in the two counts. They're identical counts. This issue was raised based on your motion in Limine to bar evidence, testimony, regarding the breach of contract and the negligence. Doesn't that admission that there's some difference in the evidence to be admitted in a contract breach as opposed to the negligence? It was a motion to dismiss one or the other, Judge. Well, I thought it was a motion in Limine to bar evidence as well. Well, it was a motion in Limine that he had to make the election. And I would like to make one other point on that. I mean, his motion in Limine with respect to contributory negligence was at about the same time. So he could have, knowing that the judge was going to allow the contributory negligence evidence, he could have switched gears and gone the other way before the trial started. Well, doesn't that show the prejudice right there that if it's in the breach of contract, you're not going to have the issue of contributory negligence at all? Well, that's an interesting question because, you know, I mean, there's still the question of mitigation. But, Judge, there's no case in Illinois that says that you can take both counts to jury when they're duplicative. The law is just the opposite. So if they're not duplicative, the jury can hear both? If there's additional facts. So you're saying the allegations absolutely mirror each other, there's no difference? They're repeated and re-alleged. And I invite the court to read the First Amendment complaint that's attached to their brief. They're repeated and re-alleged. And they're identical. The allegations are identical. The proofs are identical. The evidence is identical. And the evidence would have been admitted anyway. The only difference, and the evidence would have gotten into the case anyway under sole proximate cause. The only difference is the contributory negligence instruction, which they have not raised on appeal. They have not raised the instruction on appeal. They've only raised the admission of evidence. And all of the evidence you're saying would have come in on the breach of contract? Sole proximate cause. And I read you the Aiden case. Even applying to Cooper's Library. I read you the Aiden case. Sole proximate cause allows all that evidence to come in. So the jury would have heard everything. The only difference is there would not have been a contributory negligence instruction, which they have not raised on appeal. Well, I'm not sure that sole proximate cause comes in when the only parties in the case are the plaintiff and a single defendant. Well, I refer again to the case. Why would you have a sole proximate cause instruction? Well, except to get to contributory negligence. Then we're not dealing with sole proximate cause. We're dealing with contributory negligence. Well, I think sole proximate cause only plays when there's more than one defendant. Well, no. It also plays when the plaintiff is the sole proximate cause of the injury. I mean, the Weissman case, which is court- But I don't think you get a sole proximate cause instruction. You have other instructions in terms of who has burden of proof. Well, in Weissman v. Schiller, the plaintiff was found to be the sole proximate cause, and the appellate court affirmed. Weissman v. Schiller became inflected. It's a case I argued. You know, it's done when there's no other third party. What you're saying is that you can only raise it when there's a third party. Well, on the breach of the contract claim, how does that evidence come in? Let's say they pursued that only. You still have to prove you have to prove the contract of breach and that the breach proximately caused the injury. And it's the same proximate cause instruction that you have in a negligence case. There's virtually no difference at all. So, you know, and again, I refer to the case that the Supreme Court used to come up with this whole Cooperson-Lybrand theory. So all of the evidence, whether you call it contributory negligence or not, if they had pursued the breach of contract statute as opposed to the legal malpractice, you're saying the jury would have heard everything they heard anyway. Correct. And so there's no prejudicial error. Correct. And there's other reasons why, you know, there's no prejudicial error, but can I speak for a minute on the summary judgment issue? Sure. In fact, I was going to invite you to do that. Yeah, I know that's an issue you raise, and I can tell from your question that you want to hear about it. I think to understand the context of that, you have to understand Exhibit 52, which is the construction loan agreement. Okay? Now, what the construction loan agreement, and to understand how it plays into that motion, I have to read Section 5.1 and compare it to Schedule 5.1. Now, what that construction loan agreement said, for the first closing, okay, there's no requirement to have compliance specifications. There's like five or six things that you don't have to have, including zoning. And Maui Olerich signed that agreement. Now, what Mr. Kamin said, the expert, he said that there was negligence with respect to the first closing. And then when he was asked, well, but any other further distribution would require compliance with Section 5.1, which means they had to have compliance specifications, and they had to have zoning. Now, further distributions were not controlled by the lawyers. That's between the bank and the developer. And he was asked, now, are you saying that somehow they were negligent because the bank didn't enforce the construction loan agreement, which provided an outline for them to have prevented this zoning issue from happening? But isn't the plaintiff arguing that they would not have approved the loan had the zoning issue been, so you would not have even gotten to the very first closing? That's their argument, but it's not a good argument. And it's not a good argument for the reasons that Justice Gordon raised, is that the first loan was a refinance. And they didn't need zoning, and they didn't need construction documents, because they had adequate security. And if the court… I'm going to go to the damages, but they know the ultimate purpose was to build this multi-story building with a certain number of units, and that was the whole plan. And this initial purpose was part of that plan. When they have considered zoning, if I'm loaning money to build a multi-story building, and then they find out that the plan couldn't possibly go through because zoning was not correct. Well, I think if you read the testimony of the president of the bank, George Clanton, he knew at the time of the initial closing, and I'm referring to page… Byron 26, page 307 and 308. He knew at the initial closing there were no plaintiff's specifications. And he also admitted that without plaintiff's specifications, he knew that you couldn't have zoning. So the zoning issue was not on the table at the time of the first loan. Counsel, since we have a summary judgment case here, I think we have to be as clear as possible on where the material issues of fact reside. So your opponent says that you were hired to do the following, and I'll enumerate it for you. Structuring the loan transaction. Negotiating loan documents with the attorneys for the developers. Documenting the transaction. Gathering a checklist full of needed documents. And verifying the appropriate zoning was in place, as well as handling the closing. Now, my first question is, was there an extrinsic submission by the plaintiff identifying these five items as being the responsibility with which the attorneys were charged? Does the plaintiff have an affidavit to that effect? Not to my knowledge, no. Well, we'll get it on rebuttal. Do you negate any of those five responsibilities as having been the condition or the purpose of your retention? I shouldn't give you the good lawyer that you are a word like purpose. It's too easy to wiggle from. But were you asked, was your client asked, were those conditions or terms of your retention? We were hired, Judge, to document the loan. So you denied the others. Now, if they urged that you were, in addition, given these four or five other charges, if they have extrinsic submissions to that effect procedurally, can we uphold the summary judgment in this case? Yes. Why? Why isn't there a material issue of fact, then, as to whether you were hired to document the loan, which you didn't do, and the failure to document the loan being a cause, I'll give you that, in my question. A rather than B cause. A cause of the damages. And if that were the case, how could the summary judgment be assumed? Okay. I'll explain to you. It has nothing to do with the summary judgment. It has to do with expert testimony. And the question is, you can't weigh evidence on summary judgment. Are you telling me that your answer will not depend on any weighing of evidence? It does not depend on any weighing of evidence. Then I'm all ears. Okay. It has to do with the expert testimony. Okay. And it's the bar case that's been around for years and years. Was it a violation of the standard of care for these lawyers in preparing the construction loan agreement and giving it to the bank and say, and here's the outline for everything after the initial closing. Follow this and you will be protected. Counsel, so you're hanging your hat on the damages other than the first $4.5 million, which you have adequate protection against because of the insurance, title insurance and the mortgage. Now let me ask you, if that's your defense, is there a reasonable inference to be drawn either way, either in your favor that there was no foreseeable nexus between the first disbursement and the subsequent disbursement as opposed to an inference under rules of damages and foreseeability, Hadley v. Baxman, if it's a contract, or just foreseeability, Paul's graph, if it's negligence, can't there be, aren't there conflicting inferences there? And if so, isn't that precluded in the summary judgment? Well, now you're talking about proximal clauses as opposed to 213. The ruling by the court was based on 213. And whether or not the construction loan agreement, as drafted, with the protections that the bank had and could have enforced, was it a violation of the standard of care? Well, that has to do with foreseeability, ultimately. Well, the expert wouldn't testify that it was, and that's why it was precluded, But the expert testimony, as your opponent points out, doesn't relate to the conduct of the attorneys. It relates to areas of expertise in terms of the construction aspect of the case itself. Well, under Barnes, I think they have to have expert testimony. But to answer your second question, foreseeability, the question is, is it foreseeable that the bank would ignore the construction loan agreement that was given to them, that had the protections that they needed? Isn't that, in its own terms, basically, isn't that immersed in a fact issue? A factual, a question of what inferences are there to be made about human conduct? And I think the restatement in these areas, I think, ultimately says, this is not the fodder of a summary judgment, F-O-D-D-E-R, or summary judgment. Well, let's go back to the context, then. If you want to talk about the context, let's go back to the context. The evidence, there's substantial evidence that the bank knew at the time of the initial closing, and again, I refer to the President of the Bank's testimony at page 308. There are many things that weighs evidence. If you're dealing with weighing evidence, except where the, maybe under Putin, where the Pedrick Rule is involved, you know, where the evidence is so overwhelming that the Supreme Court, at least in that one instance, allowed just a smidgen of weighing. But other than that, you can't weigh evidence in a summary judgment. Well, we're not weighing evidence. What I'm getting back to is the verdict. There was a jury verdict, and there were a number of contested issues of fact, any one of which would have led to the not guilty. I mean, you're talking about a damage calculation. You know, let's start with a $5 million damage that the jury said that there was, entered a verdict of not guilty, and it could have been any number of contested facts, and I invite the court to look at the court. But we're talking about judgment before it got to the jury, where the court isolated the issues that could get to the jury, so that only one of the complaints, one of the theories of liability went in. The other didn't. And presumably, wasn't there a partial summary judgment? There was no second theory of liability, because there was a partial summary judgment. Well, but only on the damages. It excluded the jury from hearing the total damage claim. Well, yes, but they heard all the evidence regarding liability, and they entered not guilty. I mean, your point would be very valid if they had entered a verdict for $1 million or for $5 million, then I think we'd be arguing strenuously here. But what we have is a verdict of not guilty, and I invite the court to take a look. Because the court precluded any evidence of anything other than the initial disbursement. I thought I gathered that from your briefs. But the conduct leading up to the initial disbursement is 99% of the conduct that was criticized. I mean, there's very little, if any, conduct after the initial closing. The lawyers were not involved in those disbursements. That's between the bank and the developers. Now, I invite the court to take a look at Orzell v. Swesky, a 2009 case written by Judge Wilson, where a similar issue like this came up. And what the court said is there's a not guilty verdict, and maybe there are issues here, but where there's a not guilty verdict like this, the jury could have found any number of questions of fact in favor of the defendant. That's where you have a general verdict. It's a general verdict, and there's no special interrogatory, Judge. And there wasn't in this case. And there was no special interrogatory in this case. It's a general verdict. And there's... Except when you have, when it's preceded by a fragmentation of the initial case through the motion practice. But the fragmentation had nothing to do with the issue of liability. It only had to do with the issue of damages. It had absolutely nothing to do with the issue of liability. But the last point I'd like to make, Judge, is that there's overwhelming evidence, okay, that the bank knew that there was no zoning for the first disbursement. Not only was it in the written contract that they signed, but the president of the bank said he knew it. And, again, the president of the bank said before the closing, I knew we didn't have plans and specifications. And he said as much as he knew that there was no zoning. Now, not that he said as much. What did he say? Well, he said, I knew there were no plans and specifications. Okay, he said that. The difference is that there couldn't be any zoning without plans and specifications. And he admitted that. He admitted that. He said there could be no zoning without plans and specifications in place. Yes, 308, Judge. He said it's logical. That's what he said. Now, this is an experienced bank officer, president of the bank, okay. At first, they sign a contract that says no zoning is required. Second, the bank officer comes out and admits that. I think there was another point I wanted to make, and I can't. Can I reserve some time? You should have put in a counterpoint. I would also add that Scott Redman testified that he told the bank, and if you look at volume 27, that's the defendant who handled the transaction. Volume 27, page 603 and 604. The jury believed Scott Redman. They didn't believe Molly Olerith. That's what happened here, Judge. And it would be wrong to reverse based on these peripheral issues. The issue here is the jury believed us and didn't believe them. We had a two-week trial. The judge did an excellent job. She can't be criticized for what she did. Her rulings on the evidence were correct. And I'm in urgent support of the attorney. When I was a trial judge, that was only meaningful when I heard it from the loser. Thank you, Judge. I want to stop and say I think Judge McGregor did an excellent job of validating some of the counsel's findings. That's all. To deal with the very last issue counsel had brought up regarding what the President's Bank testified to, which we've heard now numerous times, counsel said it's on page 308. If you actually look at the line of questioning, the Bank's President talks about how he was shocked to find out it didn't have any number of things. He says, I did understand that the plans and specs weren't finished. And then defense counsel asked questions about, well, you can't create a budget then. Is that correct? Well, that's correct. And you can't get contracts for construction yet. Is that correct? That's correct. You can't get zoning, correct? Answer, that I don't know. You don't know none. But doesn't that make sense? Answer, I'm not a zoning expert. Question, well, if you don't have plans and specs, how can the city decide your building complies with zoning? Answer, well, that would be logical. That was the testimony. Not that I didn't know there was zoning. Just that when asking things in trial and sequence, well, could that be logical? Yes. But here, it's not just that. Here the actual facts were that there was a plan used to develop. So the idea is you go in, you explain that the building is of a certain size, a certain square foot ratio. You can get some tax breaks. Well, no, but you can get additional, you can grab an additional area. So, for example, if you're on an alley, that might boost your floor area ratio so you can make a bigger building. There's different things like that that come in. But that doesn't mean you have to have the full detailed blueprints in order to get the plan used to develop. What happened here is they actually, they went to the city, they went to the zoning board, they applied for the planned use development based upon the building of a certain size, and it was denied. How do you distinguish from the RSL case? Since you had a general verdict without a special interrogatory, how can you attribute prejudice where you don't know the grounds on which the jury's determination was made? Well, I think you distinguish on a couple of grounds. One is as far as our appeal on the contract claim, the contract claim is never put before the jury, so you can't possibly say that whatever their verdict was with respect to the floor claims has any effect on what their verdict would be. If we were to conclude these are duplicative, do you really have a case sense? If we find that the actual allegations are virtually identical, do you think you get to go to the jury on the identical allegations? Well, even if you did, yes, and the case actually is Nettleton v. Stoudstill, which is actually the case of that defendant's site, where it says, although plaintiffs' claims for breach of contract in legal and moral practice were based upon the same conduct, they should not have been dismissed if they were pleaded in the alternative. The point being that there are different defenses for contract claims and tort claims. You could possibly get to different damages based upon causation. I'm not really sure at this point whether the Raffke, Nettleton, and Majumbo case are really that distinguishable, because I think they all seem to agree that with Collins, that you can plead in the alternative, and the question is whether the claims are duplicated. And if they're duplicated, Majumbo tells you that it's dismissible, as would Raffke and Nettleton. Well, so I don't know, because in Majumbo, the person, Nettleton, just says they're not dismissible. Nettleton says even if it's the same conduct, as long as they're plead in the alternative, you don't see some of the erasure. How do you show the pre-judicial error if, in this case, the proximate clause is going to go to the jury either way? Well, I disagree completely with that idea that all of a sudden you can now allege sole proximate clause and you get to bring everything in. I mean, if you look at the cases on counsel's sites, you've got that Leonardi case. But wouldn't they be allowed to suggest to the jury that the reason for the injury was because of the way the bank began this whole process and was willing to proceed without certain things? Would that come in? Would the jury have heard that on the breach of contract as well? No, no, no. Not when, if you don't have an empty chair. I mean, you've got sole proximate clause arguments when you've got an empty chair. You've got a third party. But your opponent says no, that even if you have plaintiff against a single defendant, you could still give that instruction. But that, frankly, challenges both my reason and my memory, but I can't be certain about that. There is a case at least where they allowed them to do it at the trial court, but all that means then is all the defendants argued at that point is that the plaintiffs haven't proved causation. It's not that there's a sole proximate clause. You just failed one of your elements of causation. But doesn't that information all become relevant then to the finder of facts? No, no, no. Only information is after the fact, after the attorneys came in, and you then didn't follow their advice or you did something else. But it doesn't then allow you to do what happened here, where they could point to every single thing that the bank did prior to ever even hiring the attorneys and just say, well, you're reckless, because then that ignores the reason why you're hiring an attorney. Is there a way to help you? Now, the prejudice in this case is perhaps their greed, to give you an idea of what exactly they're talking about. I mean, the very first sentence of Appellant's brief starts out by saying, the plaintiff Oakbrook Bank was looking to pursue an aggressive program to expand its loan portfolio by $72 million for the year 2000, quote, to excite the greed of investment banks and brokers. I mean, that was the start, not only of this brief, that was the start of the case, and that's what they hammered on again and again, which has nothing to do with whether or not the client was actually then injured as a result of their malpractice or not performing their conduct under the contract. Well, supposing these gentlemen, the developers, Mr. Grossman and his associates, were already under indictment where yesterday's headline, when the bank would hire a lawyer to assist in consummating the loan transaction between the two of them, at that point, would you also claim that contributory negligence here, since it was independent of and did not interfere with the lawyer's advice, is not admissible? Supposing the lawyers didn't know that these guys were headed for Statesville, and the bank did, but the bank went ahead with it. I'm giving you a very far out hypothetical. In that case, I think it depends on what the lawyers were hired to do, because let's take your hypothetical. Say the lawyers were hired to document a $500,000 loan on a piece of property worth $3 million, and they failed to file the mortgage. Simple as that. Failed to file the mortgage. These guys are fraud mongers. They were all crooked to begin with. They were to try to do all these nasty, horrible things, but if at the end of the day, had they filed the mortgage, the bank would have been made whole. Absolutely there would be negligence. But I think you're avoiding the key, at least to what I thought was latent in my hypothetical, which is that there would be no real cure, so to speak, had the lawyers done their job, because they were dealing with crooks. If they had withheld information, if the client had withheld that information from the lawyers, then I think it probably can't come in, because then the lawyers could have gone ahead and given advice then to the client on steps they can take in order to protect themselves further. But, once again, even that changed my hypothetical, where the lawyers did know, but also the bank also knew. And then, it depends on the bank. If the bank chose to go ahead, based on the reliance on, I guess, on the attorneys having said that zoning is in place. No, I don't think if the same thing follows through. For example, banks lend to bankrupts all the time. You can provide debtor in possession, for example, financing. Well, lending is inherently risky if the bottom line is that there was nothing that the bank did, no information being withheld, they shared everything with the lawyers, but then the lawyers ended up failing to do something, which ultimately ended up on an injury for the bank. I don't think you get to just bring in the fact, well, it was a dumb idea to begin with to get in bed with these guys. To me, it goes against the very nature of what we're hired to do. You take your clients as you go. Except that there's a difference between, and I think you have to give some leeway to your opponent's argument, that in Cooper's Library, the nature of the very task given to the accountants to perform was a task designed to catch the crook, so to speak. In my example of the smoker going to the surgeon and the surgeon committing an malpractice in the surgery, well, you go to the surgeon because you already did the oncologist because you've already bought the problem. In this case, that's not the same because you will hire a lawyer even if you are the most experienced, diligent, and competent banker in the world. In fact, I would imagine the more proficient you are, the better of a lawyer you'll get. Very interesting. Two points on that, Your Honor. The first point being that actually for smaller, less complex loans, what the record actually is in this case, is a lot of times the banks themselves will do all the documents. In-house. But sometimes the law officers will do the initial documents and then they'll go out for a loan review or a lawyer looks them over after the fact. Would they do that in a $19 million contract? No, no, no. That's the point is this was a complex transaction, therefore you go out, of course, and you hire outside counsel. The second point being the reason you go out and you hire counsel that holds himself out as having expertise is you have to assume the worst. You assume everything in the world is going to go wrong. I think we're kind of arguing about a non-juridical idea, but in point of fact, you hire lawyers in those instances in terms of one's own common sense to prevent the loopholes, the future possible breach or escape hatch that might result to thwart or contradict or countervein your purpose, which is to make the money that this loan will generate. Well, except once you go to the contract client claim, here there was evidence they agreed to do more, and that should have gone to the jury. One final point, Your Honor, on the summary judgment. I was able to put the exact site in the short time, but, no, we cited to the testimony in the summary judgment proceedings, the sworn deposition testimony, the general counsel of Oak Brook Bank, as well as Ms. Ulrich, and then put in documents. Well, let me ask you specifically with respect to those duties which you set out at page five of your brief. Is there an extrinsic submission, an affidavit or deposition testimony that says specifically that the lawyers were charged here to negotiate, to document, to checklist the document, to verify appropriate zoning, and I emphasize that one particularly, as well as the closing. Is it explicit in any extrinsic submission that this was what the lawyers were told to do? Yeah, we actually took most of those things verbatim out of a piece that the lawyers gave us, outlining the various things that they do in the marketing area. Are these specific duties explicitly listed in an extrinsic submission or affidavit? Yes. Deposition testimony, not affidavit deposition. Deposition. Yes. Yes, Your Honor. Do you happen to have the reference to the deposition that it would be? I tried very quickly to find it. I didn't find it in a short period of time. That's okay. Okay. Would counsel have a problem if I asked the bank to just send the letter saying, here are the deposition references with no argument? Just the record site. Is there an objection to that? Then you'll copy your reply? Yes, just the record site. And if I make it? Well, I don't want to generate more paper here, counsel, if we can avoid it. Let's assume that you will follow that. I will send it to Mr. Marconi. Send it to him first. That's what I'll do. And then there should be a joint submission of that information within the next three days? Absolutely. Okay. Coming from the two of you would just be deposition. That's it. We'll do it. Thank you. That's on the part of the record. No, Your Honor, we respectfully request that you reverse and remand. Thank you, counsel. This case was well argued. The briefs were superb, and there's a lot to think about. Thank you. At this point, there will be a change of panels, so we have to take a very brief recess knowing that the hour is late.